We'll start with Mr. Young for OneBeacon. May it please the Court. In the time available this morning, I propose to address two key issues. The first, the interpretation and application of the prior knowledge exclusion. And the second, whether the conditions for Stowers' liability have been triggered. OneBeacon issued a claims-made policy with two different prior knowledge exclusions. One for claims where the insured prior to policy inception had a reasonable basis to believe it had committed a wrongful act. And another for claims where the insured prior to policy inception could foresee that a claim would be made. The trial court held that the first of these exclusions was applicable as a matter of law on the facts of the case, but declined to apply it as written. It instead merged it with the second exclusion, believing it necessary to do so to avoid making the retroactive coverage illusory and to avoid a supposed unintended gap in coverage. The trial court erred because the exclusion as written did not make retroactive coverage illusory because the retroactive coverage still applied in many common circumstances. And second, there was no unintended gap in coverage. The insured could have easily triggered coverage under the prior policy for any wrongful acts that were excluded by the exclusion as written. Okay, so let me focus in on something that has bothered me about this policy, and that is the definition of wrongful act, which is any act or alleged act, error, omission, or breach of duty arising out of the rendering or the failure to render of professional legal services. So that's pretty much doing anything or not doing anything, so it covers everything. It doesn't even say wrongful. It just says a wrongful act is any act or alleged act or omission. So right now I'm sitting here either committing an act or omission. I can't help doing either one unless I guess I'm unconscious or something, and even then that would be an omission. Well, we are not arguing for that construction of the policy, nor did the district court adopt that construction of the policy. It was troubled by the same thing Your Honor is troubled by, and in its opinion, record page 8288, it addressed that question and applied the doctrine of nuscatur asociis, that is a word is judged by its company, and said that in context wrongful act as used in that series of phrases, wrongful act, disciplinary violation, or professional misconduct, necessarily had to be an act that was blameworthy in some way. Okay, and, you know, I think that's very logical, although, frankly, y'all are the authors of this, y'all being your client. I know you personally didn't author this, and you personally likely would have done a better job authoring this policy, but y'all are the authors of the policy. You have this overbroad definition. It strikes me as so you in essence are conceding we've got to narrow this definition in some way, so you're saying it has to be at least an act or omission that is wrongful, but then we don't really have a definition of what's wrongful. So let me ask you this. Why would we not, instead of judging wrongful by its company in terms of that exact sentence, why wouldn't we judge it by its company and the policy it's in? It's in a malpractice policy. Y'all don't cover fraud. You don't cover intentional acts. You don't cover knowing wrongdoing by the lawyer. You cover malpractice, mistakes. So why wouldn't, and in order for malpractice to be actionable in litigation, it has to cause harm. So why wouldn't we construe this to be an act that could cause harm to the client? Well, several things, Your Honor. First of all, the district court found that the other branches of that definition of wrongful act, namely disciplinary rule violation and professional misconduct, were triggered as a matter of law on the facts of this case. So that would be point number one. Point number two would be. I'm not bound by that. That's a legal finding, right? Well, that is right, but it's a correct legal finding. You know, I mean, what's your other argument? Let me ask that, and then I'll come back to whether it's a correct legal finding. The other argument is that the court has to construe exclusion number two in the context of a policy that also has an exclusion number three, and it has to assume that the two cover at least some different circumstances. That is, that things are excluded under two that would not automatically be excluded under three. So if we construe two to require claim foreseeability, as the district court did, then you make it coextensive with three. No, I didn't use the word foreseeability. I said an act that causes harm. All right. Well, the problem that I have with this whole thing and with the idea that this is a disciplinary violation, and maybe it's eight years as a trial judge, I mean, this is not that uncommon to mess around in discovery. It shouldn't be uncommon. It shouldn't be common, but it is. So the fact that someone doesn't answer discovery and there are the other guys saying you need to answer it and whatever, it's so common. I mean, it's like breathing air. Unfortunately, and I don't mean to anybody in the room, you need to not do this, I can't see that as a disciplinary violation, just not answering discovery. Well, the third aspect of it is professional misconduct, and to say that you can violate the federal rules of civil procedure regarding discovery, and that is not professional misconduct. Counsel, if there is a—you say that as a matter of law, the facts and circumstances here are such that the person should have reasonably known. In this case, I thought the opposing counsel had indicated in the court below that he had no reason to believe that he was going to attain the success with his motion that the district judge or the trial court imposed. Now, if the opposing counsel that filed the motion that caused the harm to the insured didn't foresee that he was going to get the relief that he got from his motion, why should the attorney on the other side foresee what even the proponent of the motion didn't foresee? A couple of points, Your Honor. The fact that the proponent of the motion did not foresee that he would actually achieve a striking of pleadings, a death penalty sanction, is really not the relevant question. Did he foresee that relief would be granted to him that would constitute harm to Mr. Wooten's client? That's the— You're saying whatever action the district judge took on the motion, it wouldn't make any difference what the judge did. The malpractice or omission that they should have known about and reported to you had already occurred, and it wouldn't make any difference whether—what actions the judge took? Well, I guess one of the things I'm saying is that foreseeability of harm to the client is not part of Exclusion 2. Exclusion 2 focuses on reasonable belief that he had committed a wrongful act. One could conceivably implant onto that definition— So if I commit a violation of the rules or whatever, whether or not there's any action taken against my client, whether there's any harm that comes to my client, I've already committed the omission, and I'm excluded whether or not anything comes of it. If you realize you've committed the omission, yes. And your remedy is to give notice of a potential claim under your prior coverage before that coverage expires. Well, I tried a lot of cases. I made a lot of mistakes. And the idea that each one—each mistake I might have made that I have to write down on a piece of paper or everything that I—every mistake or miscalculation that I've made in representing my client is just almost an impossible burden. You're entitled to, at your own risk, make a judgment as to which of those has potential to give rise to a claim and to say, well, you know, that objection I didn't make in a case that we later settled, that's not going to give rise to it. Is it always a question of law? There's never a fact issue on it? Well, there could be a fact issue if the misconduct were such that the lawyer was not aware that he'd committed the misconduct. For example, an estate planning lawyer often doesn't realize until 10 or 20 years after the fact that he has committed a wrongful act. There would be coverage in that case, and you can imagine a yes-he-did-no, no-he-didn't-no factual dispute that would be a fact question. That wasn't the case here. Mr. Wooten was put on notice that he had committed wrongful acts by the original request for an agreed order in March of 2007. Okay, but December 2006, the first policy. I'm sorry, March of 2007. Right, and so the problem is, though, that the motion for sanctions wasn't filed until after this. So basically you're saying that a lawyer who is messing around on discovery, which again, I mean, and maybe the rest of the world is different, and I would like to think that, but my experience in Texas and the world I lived in, both as a judge and a lawyer, we had a lot of good, fine, upstanding lawyers, but we had people that were messing around on discovery however you want to characterize that, not answering because they thought they had a valid objection that I thought was invalid either as a lawyer or judge or whatever. But discovery disputes were a huge part of my world as a lawyer and a judge until I got on this Court, thankfully. So I don't find the fact that there's a discovery dispute, the fact that somebody thinks you haven't answered, somebody thinks you haven't answered fully, somebody thinks, and this guy thinks he could do a better job, but he's not doing it for whatever reason, I don't personally find that to be professional misconduct. It's wrong, it's not what I would teach in professionalism seminars, but if that's professional misconduct, you're going to disbar a lot of lawyers. That's all I can say. And I'm sorry to be saying this, I really am. I don't want people to take this as a blessing on this kind of conduct. But when we're talking about an insurance policy that should be excluding something that's essentially a fortuitous, you know, the known loss kind of doctrine, that's really where this is headed or should be headed, is to exclude people that are trying to, you know, I go out and I hit somebody with my car and now I go try to get auto insurance. I shouldn't get coverage for that. I know I hit somebody with my car. That shouldn't be covered. I mean, that's really kind of what you're talking about. And now you're trying to take this to everything that somebody does that is not picture-perfect litigation conduct. For whatever reason, the policy has two different exclusions. Exclusion three covers claim foreseeability. Exclusion two covers knowledge or reasonable basis to believe you've committed a wrongful act. I'm focusing on whether it's a wrongful act. I mean, we've had this dance about what the word means. And the fact is in context, given that discovery fights anyway are so common, how can I even say somebody would have a reason to believe he committed a wrongful act by having this discovery battle that he had at the time? Not obviously by the time he gets sanctioned and all that, but at this point. This was more than a professional disagreement about whether there had been adequate compliance with discovery. Mr. Wooten let the time run on requests for admissions without responding. The rules of civil procedure explain in plain language what the consequences of that are. And I have had judges set that aside when my opponent did, and I've had judges not set it aside. Again, let me tell you this. Finish your answer and then go to Stowers because I know you wanted to cover that. Let me ask you this. Yes, sir. Before you do that. What acts of malpractice which would have occurred before the policy's inception would actually be covered? I heard you mention something about an estate. Well, I'll give you several examples. I file suit thinking the statute of limitations is four years, but it's only two. I don't realize until much later that the statute was four years. I write a contract. Why don't you realize it until much later? The statute was in existence at the time you did the work. It was. You just didn't read it. That's right. And that was malpractice. The statute says the standard of care is a reasonably prudent and competent practitioner. That's right. So you'd read the statute. Well. And then your actions wouldn't be covered under this policy. If I had read the statute before I filed the suit and knew at the time I filed the suit that I was filing the statute. But you didn't read it. That's right. So you didn't act as a reasonably prudent attorney. That's right. And then you're going to be excluded under this policy. No, I'm guilty of malpractice, but I did not personally have a reasonable basis to believe I'd committed a wrongful act. I draft a contract and. . . And your lack of a reasonable basis to believe you committed a wrongful act was based on your failure to read a statute. That's right. It doesn't. . . So your policy would cover that. No, it would cover that because the standard is what I personally had a reasonable basis to believe, not what a reasonable attorney in my shoes would have had a basis to believe. Okay, let me ask you this. Would you agree that if there is a fact issue about what was reasonable for Mr. Wooten's belief, you lose? I mean, you've got to win as a matter of law on this. We've just got to say the policy means as a matter of law what you say, right? Well, the trial court, in accordance with its summary judgment ruling, instructed the jury that the exclusion meant claim foreseeability. But did you proffer some different instruction that was rejected? No, by that point, the trial court was not going to. . . I mean, you lose if it's a fact issue. You only win if this is as a matter of law on this point. I think that's right. Okay. Stowers, I'll give you 30 seconds on Stowers. 30 seconds on Stowers. Sitko and Soriano addressed the question of whether an insurer may accept a multi-claimant, a one-claimant or one-insured offer. Neither one of them addressed the question of whether the insurer must accept it on pain of liability. That question was answered in the Patterson case. That is the only Texas authority on point. We believe the court is eerie bound to follow it in the absence of any other precedent, including any precedent from this court. Thank you. You've reserved time for rebuttal. Thank you, Your Honor. Appreciate you. All right, sir. May it please the Court, good morning. I'm Richard Patch. I represent Dish Network. I want to focus on two compelling reasons why you should not disturb. Okay, but you're going to speak on behalf of the whole gang on your side of the table. Yes. Okay. Just to be clear. Go ahead. Two compelling reasons. Number one, this policy as written is illusory with respect to retroactive coverage. Accordingly, Judge Miller was required to accept the reasonable alternative interpretation advanced by the insurer. Second, the Stowers demand, a Stowers demand, does not have to offer a release to all possible insureds to be valid under Texas law. Going right to the prior knowledge exclusion, Judge Miller didn't act in a vacuum here. The multiple other cases have addressed the same problem that is created with the controversy or dichotomy between covering prior acts under a claims-made policy and a prior acts exclusion. In every court that has addressed the issue, starting primarily with the Ashley Court that the judge referred to, there the same arguments were made. And the Court found because they used the word reasonable basis, that interjects an objective standard into the exclusion 7A2. Because a reasonable attorney would recognize a wrongful act under the policy, even if the insured did not, their policy excludes every act of malpractice. The only thing that's left, as the Ashley Court found and as Judge Miller found, are coldly frivolous claims, one where a reasonable attorney in the circumstance would not recognize that they had committed a wrongful act. Okay. What about the statute of limitations issue? Because, I mean, a good lawyer could think back in the day in Texas you had this thing about whether fraud was a debt not evidenced by a writing, which would be two years, or whether it was something else, which would be residual, which would be four years. And there was sort of a debate, and maybe the guy had been to a CLE that said it was four, and then somebody, some court construed it as two. Okay. So you just screwed up, you know, and this court of appeals thinks it's two during that period of time, so, you know, whatever. So you file after three years, and ultimately it's held that you committed malpractice. That, he says, would be covered. So what's wrong with that argument? It would not be covered, because if a reasonable attorney would not have figured it out, it wouldn't be malpractice, and there would be no liability in the damage provision of coverage 1B wouldn't apply. Well, I guess it's the reasonableness of the belief. So what he's saying is you've got Wooten sitting there messing around, knowing that he's stalling and being a jerk on discovery, and so he has a reasonable belief to think he's committed a wrongful act. What's wrong with that argument? Because, look, they drafted this to put the reasonable basis into that standard. They interjected an objective standard. Every case they've given you, every example, is the unwinning subjective person, the person who just doesn't know themselves, even though, I would say, if there — it wouldn't be malpractice unless there was a reasonable basis out there that an attorney would have actually figured it out. So it's either malpractice and it's excluded, or it's not malpractice and it's not covered, but you don't need the coverage. That's the definition of illusory. That's the same definition of illusory that the Supreme Court applies. So once you understand that it can't be interpreted as written — So explain the two versus three, because I think it's a fair point that even though we construe policies against the rider, which is the insurance company and all of that, doesn't your interpretation, or rather the district judge's interpretation, meld two and three and kind of make them the same thing? No, and I'll give you the perfect example. The perfect example is the Wooten example. If at trial they had prevailed and they had said a person with Wooten's knowledge would have foreseen a claim or would have foreseen a claim, even though Wooten clearly did not, that sort of imputed knowledge would exclude his claim under A2. But under A3, it's subjective. Did the insured foresee a claim? So the difference is who are we looking at, the so-called reasonable person or Wooten himself? Wooten himself is sitting there hiding under the desk thinking, I'm fixing to have a major problem, and he disappears or whatever, which I guess he ultimately did. Okay. Versus any reasonable lawyer, but not Wooten, who just for purposes of the hypothet, I don't know the man, but for purposes of the hypothet, is a nut and really just has no idea what's going on. The reasonable person, though, would have. So you're saying those are the differences. And the jury decides. And, of course, A3 goes beyond that. A3 goes beyond that to where people know about a claim even though there's no wrongful act. So let's just say, you know, that you know your client very well, and for 20 years every time you've lost, even if you've never done anything wrong, he sues you. You're in a case, and you know you're losing. You know? I think you can foresee a claim, but you clearly did not commit a wrongful act. So A3 is completely different than A2, and it's easily reconciled. I want to address this concept of wrongful act because I had this interchange with your counsel opposite, and I'm still a little unclear about what a wrongful act is under this policy. It's a very broad definition. Would you concede that it's a wrongful act to fail to answer discovery? No, I don't. I mean, I don't agree with that because I agree with you that a wrongful act in the malpractice context has to result in some impact, injury, or harm or loss. I mean, before that happens, and again, I hate to say it, but Wooten's sort of a perfect example. Nothing came of what he did prior to December of 2006. Nothing. Zero impact. And he could have fixed it. And he could have. And that was over and over again. It was clear he not only could have, any reasonable attorney would have cured it long before any of these consequences. What's wrong with Wooten? Well, we don't exactly know. I mean, he obviously should have checked out at somewhere along the line. But, you know, the point being is that, no, not every act, not every time I have a disagreement, not every time, you know, I think I have a continuance by oral contract, the other guy disagrees, he should have confirmed it in writing. Not every one of those little indicia of items we incur in practice every day. Well, I mean, we've all had our share of opponents who were just hard to deal with, okay? And they just really, I mean, it seemed obvious to me, for example, this guy should be answering this question, and he's not. And we're having this debate, and in the old days we sent faxes, now we'd send emails, and we're fighting about discovery. At what point does that become a wrongful act, that the guy's just saying, I don't think you're entitled to anything, or I'm just not going to send you anything, or I'm just not going to respond to your phone calls, or I turned off my fax machine? At what point does that become wrongful act under the policy? With some appreciable harm, injury, or loss occurs to the client. But, you know, up until then, it's just pure speculation whether anything's happened at all, let alone one of consequence. So, you know, we think once you are faced with the illusory nature of the coverage, you must move forward. And one of the, Your Honor, one of the things I like about your focus on the wrongful act, clearly this policy couldn't, had to be fixed. And Judge Miller did, I think, a darn good job of fixing it. He addressed the wrongful act thing. He said it has to be wrongful, which in his mind, and as you read his decision, makes it clear that there has to be some sort of foreseeable loss. That's why you can't make the claim under the prior policy. As you pointed out, Your Honor, if you're just every day thinking, oh, gee, that might have been wrong, or somebody else could disagree with that particular position, and do I have to, is that a wrong? Until some loss is foreseeable or occurs or harm, you can't report it under the existing policy. It's excluded under the one beacon policy when the claim arises. So. What happens if you have a fellow, it's, he's not going to file an answer. He's just going to take his client's money. And he regularly doesn't file answers. And he doesn't intend to file an answer. But there's been no claim, there's been no consequence at that time. Under your interpretation, would that mean that since the default judgment hasn't been taken yet, even though he knows, and it's his regular course of action not to file answers, he's even going to steal from his clients. And he doesn't report that he doesn't file an answer or hasn't filed an answer. He still gets, he still gets coverage for malpractice? You know, that's a much harder hypothetical, Your Honor. And the reason it's a much harder hypothetical is because that's an outcome determinative action by the lawyer. He failed, he failed, he defaulted his client. Whereas answering, you know, whether you completely answered an interrogatory or not, not so much outcome determinative until it escalates like it did in this case. So in that case, you have to ask yourself, the reasonable attorney would know first he knows he committed a wrongful act, objectively and subjectively. And he also knows how difficult it is to get defaults set aside when the lawyer is completely and helplessly, obviously intentionally negligent and failing to move forward. So now he's got, he's got, he's got a problem. And so I think that's much, much different. Well, there you would say you could foresee that a claim would be made if you never fixed it. I mean, in Texas, if you do file an answer before the default's taken, there can't be a default. And frankly, in Texas state court, well, I realize this was Connecticut. I don't know that much about Connecticut. Under Craddick, it is awfully easy to set aside a default. I'm perhaps sorry or glad to say, depending on which side you end up on as a lawyer. So, but the problem, I guess, is, to me, from what Judge Benavidez is saying, is there's a point at which you are insuring against a known loss. And then that, to me, that would violate public policy anyway. And you can't do that. And so I guess to, at what point in this continuum of kind of discovery, jerkiness, do we finally say, all right. Or are you saying that's just a jury question and it was asked? I mean, we had golloped the opponent saying nobody ever gets sanctioned in Connecticut no matter kind of how bad they are, et cetera, et cetera. And the jury could decide that. Is that what you're saying, that this is a jury question? At what point it becomes what Judge Benavidez is talking about, like, you know this is coming down the pike versus you're just messing around and you feel like, well, when the push comes to shove, day before the hearing, I'll send in the answers? I would say it's twofold. One is the example of the default, I think, would be excluded under three because I think that lawyer knew, foresaw a claim coming. And under two, you would have imputed knowledge to you based upon what a reasonable attorney would have suspected given that conduct. So you have the bad conduct, and even if the lawyer refused to see the claim under A2, you would say there is a reasonable basis to see a claim that would satisfy A2. So in that case, you're going to get excluded under either imputed knowledge of a claim or actual knowledge of a claim. Let me ask you about professional misconduct. You know, again, I'm struggling with this because I teach civility in CLE kind of presentations and hold myself, I hope, to a high standard and all of that, so I'm unfortunately having to deal with a minimal standard instead of the standard I think people should follow. But to me, professional misconduct implies something that you could bring a winning grievance against. And I'm just thinking, and again, my knowledge of this is based on Texas and not Connecticut, but I don't remember seeing somebody get suspended or whatever just for not answering discovery unless there was something else there. And I mean, there's 80,000-something lawyers in Texas, and I'm sure there has been a grievance, but there's not thousands of grievances on this that are successful. And certainly the lawyers that were in my court and so on, they kept having their law license from what I could tell. You know, I think it happens every day, unfortunately, as the Court has pointed out. And in that trial, the focus was on failing to give notice to your client. That was the disciplinary breach that it was focused on. But here we have a case where the lawyer has an 8-year or 10-year history with the client. They know what the client wants to know when the client wants to know it. So that would be taken. So you're saying that not answering discovery isn't the misconduct, it's the failure to tell the client that you didn't answer the discovery? That was, at my understanding, the disciplinary argument that was being advanced at trial and was rejected. So under Adafina and under Trinity, we have an illusory policy. We adopt under the rules of Adafina, under Texas rules, we adopt the reasonable interpretation advanced by the insured. That's what he did. It went to the jury. The jury found against them no reason to disturb that conclusion, certainly not as a matter of law. On the Stowers issue, I think it's equally important. You know, what I saw in this appeal is that they are relying upon an unpublished shell decision that contradicts Adafina on what illusory is, and now they're relying on a memorandum decision to tell you that you have to make a new eerie guess other than the one you made in Sitco. And before that, in Vitek, and before that, in Arnold, all relying upon a very clear decision in Serrano by the Texas Supreme Court, who made this — who addressed this issue of multiple insureds and says, no, the exact position being advanced by one beacon was the exact position advanced by Sitco and was rejected by this panel, this Court, correctly, because you don't It is the insured. And even in Patterson, to start with, it's a memorandum decision, so I don't think the judge thought he was changing 15 or 18 years of jurisprudence all of a sudden in that one line of the case. Second, I'm not even sure that case decided — was decided on Stowers. I think if you read the decision, there's a paragraph about Stowers, followed by a paragraph that says, Furthermore, and this is critical, the insured in that case instructed him not to take a settlement that did not include all insureds. That's — so you can say, how could a — how can an insurance company ever violate Stowers when the insured is telling them, do not settle? That's the decision in Patterson. That's a fact. But Serrano does not involve multiple insureds. It involves multiple claimants. That's correct. It involves inadequate policy limits, if we're being honest. Yes. So isn't that a little bit different? Because there — you know, by definition, you could kill all these people and you have, like, a $20,000 policy, and that's going to be a problem. And so the carrier is trying to do the best that it can to at least reduce the number of claimants. But here, when you have multiple insureds, the carrier has an obligation to each insured. So Wooten, at some point — I mean, I guess he's disappeared. I don't know. But he's going to pop up and want his coverage. How does that alter the Stowers analysis? Because you don't have a duty to the claimant as an insurance company, but you do have a duty to your insured. Well, that's exactly what happened in Vitek, Arnold, and Citgo. Those did involve multiple insureds. In the first two cases, additional named insureds, and in Citgo, additional named insured. And in those cases, the Court grappled with that very question and came to a better answer. They said, well, look, if there's an issue about duties to the claimant, there's got to be an even higher duty to the insured. And remember, Stowers and Garcia make it clear that the Stowers decision is the decision from the insured's perspective. I mean, would a reasonable insurance company protect this person, knowing that person's making a business judgment of either paying the policy or exposing themselves to those risks? That's an insured-specific conversation, which is why a release from that insured triggers the Stowers duty, and it is a must-pay. It's not a made-pay. Does it create a conflict for the insurance company between their insureds? So let's say Wooten's going, don't do this because you're going to leave me hanging completely. If you wipe out the policy limits, I won't have a defense because then the defense duty is going to go away. I won't have money to pay this. I mean, I have children. I have, you know, whatever. So Wooten's like crying, and they go, well, too bad. We've got this case here. We're done. And, again, they have an obligation to the insured, unlike the claimant in Soriano where they don't have that. Here they have an obligation to Wooten to not leave him defenseless. Well, Wooten had never made a claim, by the way, for more than a year and a half after signing the tolling agreement, so it's probably barred. Is that the differential here that Wooten? No, no. But the difference is that Texas law is clear that satisfying your Stowers duty as an insurer to an insured cannot constitute a breach of another duty to another insured. You can't put the insurer in that position. Bright line. The language of CITCO is the bright line rule is the rule. So in CITCO, in Arnold, I guess, you left open the door to maybe a good faith and fair dealing concept, but that door was then closed by the Texas Supreme Court as well. So it is a bright line test. Multiple insureds is a fact of life. CITCO, Texas law, resolves that in favor of the insured who makes a proper Stowers demand and gives a full release and is subject to exposure. These — all these cases are really under the problem of being under an insured with multiple claims and multiple. And that's the resolution. Patterson does not suggest any basis for changing that rule, none whatsoever. You know, in conclusion, I just want to say, look, this case was a thoroughly, a thoroughly presented case in front of the jury, and the jury found that one beacon engaged in false, misleading, deceptive, knowing, wrongful behavior to deprive this insured of coverage. The verdict shows that the jury — But what he wants to win is a matter of law. The jury didn't really like one beacon. The jury didn't believe a single thing they said, including that they didn't have a good faith belief in their coverage defense from the start. Judge Miller — I'm going to wrap up because I gave him 30 seconds more, so I'll let you wrap up. Judge Miller faithfully followed the rules in interpreting this contract and adopted a reasonable alternative suggested by — argued for by the insured, which he was required to do under Texas law. His interpretation matches every court that has looked at this same problem before him. And here, the bottom line is we have an insured who paid insurance for 25 years, and the first time that insured needed coverage, what he got was a company that accused him of fraud on the application, made him defend a rescission case, refused to provide him a defense in the underlying case, made false statements about the basis of their claim, and the list goes on and on. End period. Thank you. Thank you very much. All right. Counsel, we'll have your rebuttal. May it please the Court. Mr. Patch says that this exclusion is — exclusion number two is to be judged from the point of view of an objective, reasonable person. In that, he is partially correct. The basis that the insured has for believing that a wrongful act has been committed must be an objectively reasonable basis. But it is not a reasonable person that must hold that basis. It is, quote-unquote, you, meaning the insured, who must personally have a reasonable basis to believe. And so it combines both subjective and objective elements. So what's the instruction you would have given that would capture that? I mean, I know you want to win as a matter of law, but you keep coming back at me with stuff that sounds factual. And y'all wouldn't have won this with the jury. I think we can say that pretty easily here. So what is the — you don't like the instruction Judge Miller gave. What is the right one? The right one is, ladies and gentlemen, there is no fact issue for you to resolve. You are discharged. Yeah. That's the problem. So any time you try to make this factual about what did Wooten believe — Well, but what basis did Wooten have to believe? What would a reasonable person have — Once we're focusing on Wooten, I think you lose. I mean, Wooten focused on his mind because then the jury gets to decide what's in Wooten's heart, not me and not the judge, the trial judge. He gets to decide what's in Wooten's head, Your Honor. And what's in Wooten's head is the fact that his opponent had already threatened him with death penalty sanctions and had said — In the context of a state where apparently this never happens. Golub himself, the opponent who made the threat, said this doesn't happen. Well, first of all, he had accused Wooten, correctly, of several specific discovery rule violations. Those were wrongful acts. Secondly, and this brings me to my second point, there is nothing in Exclusion 2 that requires a matured or an imminent loss on the part of the insured's client. I mean, the problem is that this definition of wrongful act is so overbroad you have to rewrite the policy. And once you're rewriting the policy, in essence, it's a problem for you. Because if we apply the act as written, it covers everything. If we apply the definition as written, it covers everything. And so then it becomes totally illusory, and that's actually an easy case. All right. And so what does Texas law instruct a trial judge to do in that circumstance? It instructs the trial judge to construe it, to narrow it as much as is necessary to prevent its being illusory. So I agree if Judge Miller had said any act from the moment you get up in the morning and brush your teeth until you go to bed is a wrongful act, and if you know you did it, it's excluded, I agree that would be illusory. So what would Judge Miller be charged with doing in that circumstance? He'd be charged with narrowing it, but not narrowing it any conceivable way, narrowing it in a way that prevents its being illusory. He did that. He said a wrongful act must be in some sense blameworthy. Then he went further and said, but even if you narrow it like that, I believe it's still illusory because it doesn't cover any wrongful act that the insured knows he's committed but that he doesn't believe will result in a claim. With respect, that is not illusory coverage. Under the grain dealer's case, if there is coverage available under a set of circumstances, it matters not that there is a broad set of circumstances excluded by an exclusion. That's what exclusions do is they eliminate coverage that would otherwise exist. And so under this policy, there are two different exclusions. If you know, if you have a reasonable basis to believe you've committed a wrongful act, you're not covered. And if you can foresee a claim, whether or not you've committed a wrongful act, that's not covered. That's different from a lot of policies. That's what the insurance company wrote in its policy and what the insured accepted. That is what we have to try and apply. And Judge Miller, we believe, was correct in saying this exclusion, too, is very broad. It includes this claim, Wooten, as a matter of law, knew that he'd committed a wrongful act. He may not have subjectively believed that it was wrongful, but he knew the fact. But what he then did is construe exclusion two so as to make it a subset of exclusion three. Texas law says you don't do that. Okay. Thank you to all counsel. I find this area of law fascinating. Your case is under submission.